will be your panel for this case, which is Edwards Family Partnership v. Christina M. Johnson, trustee here for us from Mr. Spencer. Thank you, Your Honor. Jim Spencer for Edwards Family Partnership, Bayer Holdings Trust, and Dr. Charles Edwards. Sometimes the saying is that possession is nine-tenths of the law, but here it is the law for a key issue in this appeal. Except for the statute of fraud issue, which I will address later, there's no dispute but that EFP and BHT have claims in this case. The question is whether those claims are secured or unsecured. The claims are all secured, and here's why. All the money provided by the appellants in this case was used to buy consumer notes. A security interest in notes called instruments under the UCC is perfected by possession, possession of the instruments. Here, at all relevant times, EFP has personally possessed all of the notes in mortgage portfolios one through six and still has those today. Hal McCarley, an independent custodian, has the possession of the remainder of the notes from the home improvement line for the benefit of EFP and BHT. The point is the debtor didn't have any of those notes, and that's the key point because on the day that the case was filed, the debtor, CHFS, did not possess any of the consumer notes. With instruments like notes, promissory notes, possession is the key. Possession is the oldest form of perfection. It's notice to the world that somebody else claims an interest in those notes. Since the debtor didn't have possession of the notes, all other potential creditors, including hypothetical judgment lien creditors, were on notice that those notes were already encumbered. They were on notice. Yes, sir. Can I just interrupt you? I mean, because there are eight issues. It's a cross appeal. You're jumping in correctly. It's your choice. As to the portfolio questions, just so I can keep this straight, this dispute that has been so longstanding has come to our court three, maybe even four times, if you count a mandamus. Are you relying on any of those prior rulings by our court as to whether or not you have, as to this issue, whether or not your interest is secure? Has this court already decided that in any of those cases? No, sir. The court has not decided that in any of these cases. And I jumped to those issues because those were the issues that we appealed. First, we appealed the issue of the portfolio loans and whether we were secured on those loans. And as I said, the bankruptcy court recharacterized those portfolios as loans. And when it did so, it took two of those portfolios, portfolios one and two, and said that EFP, Edwards Family Partnership, had a secured claim as to those loans because it had possession. But then, with respect to portfolios three through six, which were not in writing, the court said that those portfolios, even though we had funded them and were owed $5 million on the date the petition was filed, that those loans were barred by Mississippi's statute of frauds, essentially gifting $5 million to the estate. I have a question about that, which is, even if the statute of frauds applies and that bars you from recovering on the terms of the contract, but it wouldn't mean you don't get all that money back normally. But did you actually timely raise an unjust enrichment theory? I see it in your reply brief, but I'm not sure that it was raised in either the courts below or in your principal brief here. So, does that stand or fall with the statute of frauds issue? No, sir, it does not stand or fall with the statute of frauds issue. And frankly, we were hit with the statute of frauds in the pre-trial conference stage. It is not in our initial brief, it is in our reply brief, but the statute of frauds is not, these contracts are not subject to the statute of frauds anyway for two other reasons. One is because the contracts... Okay, I'll let you get into that, but just to answer my question, it sounds like the unjust enrichment was not raised below is what you're saying. It was not raised, to my knowledge, no, sir. Okay, thank you. Go ahead and tell us why the statute of frauds ruling was wrong. The statute of frauds ruling was wrong, your honor, for two reasons, in addition to that unjust enrichment. Number one is these notes are... I'm calling them notes, the mortgage portfolio loans three through six are re-characterized as loans. In any loan, there are going to be two components of a loan. There's a loan of money and there's obligation to repay it. Here, there's no question, but that there was a loan of the money if that's, in fact, that's what the bankruptcy court characterized them as because they were funded fully. Then there was an obligation to repay them. There's nothing in writing, obligating the debtor to repay them. And under Mississippi law, it's clear that a contract of indefinite duration, like this, where it doesn't have a stated duration, is not subject to the statute of frauds because it is capable of being performed at any time within 15 months. But the bankruptcy court accepted that, didn't it? It accepted that reasoning, but then looked below the loans to say that you have a future stream of income coming to CHFS. And therefore, the repayment, if we're going to divvy up money, couldn't have happened except according to that stream of income. Yes, Your Honor, that's what the bankruptcy court said. And we believe that's not correct because the obligation, if it's a loan, the obligation is on CHFS. It's not on the underlying borrowers to pay the money back. It's on CHFS, and that's simply not in writing anywhere. The underlying loans are just collateral. They are not the obligation that CHFS would have to pay EFP for the loan. That's just simply a different obligation, and we think the court was wrong in that. There's a Mississippi case we cited in our brief, Bean v. Bowden, that's very similar, where there was a joint venture that was oral. And when one of the joint ventures died, the other one sued to collect his share of the debt from that deceased joint venture. And the defense was that the statute of frauds barred that, and the Mississippi Supreme Court said, well, the oral joint venture was not in writing, but it was capable of being performed within 15 months. And if it's an indefinite duration like this is, this note is recharacterized loan, then it's not subject to the statute of frauds. The second statute of frauds issue is that we fully performed the loan. Again, if it's a loan, there are two positions. There are two things that happen. There's a loan of money, and then there's an obligation to repay the loan. And here, as a recharacterized loan, there's no question but that the portfolios were purchased. And under Mississippi law, the two cases that we cited in our briefs, the Pontaine case and the Gibbons case, they say that if you have a contract that's been fully performed on one part and the only other obligation to be paid is the obligation to repay, then that contract is not subject to the statute of frauds because you've had full performance by one party. And here there was full performance by EFP when it funded the purchase of all these portfolios. So those are the two reasons that we suggest that the court should find that the bankruptcy court erred in applying the statute of frauds to these loans that they were to hold that they were not enforceable and essentially gift $5 million to the estate. I do have other issues that we filed a direct appeal on if there are no other questions on those. In the time I have left, I would like to. Here's a question I have. I mean, just on your last comment, this is a big picture question. You said if the statute of frauds holding stands, it's basically a gift of $5 million to the estate. I mean, your clients own 99% of the estate assets, as far as I can tell. So is it is it only a matter of. Of the administrative wanting to get these are secured claims because the administrative claims are going to be have priority over the unsecured claims and the administrative claims are basically going to pay the trustee and its law firm. That's not all of it. No, sir. Your Honor, our base, we bought and paid for these portfolios, and we're entitled to be repaid. I understand. Isn't everything okay isn't everything in the estate. After the attorneys are paid I get there's that issue with administrative claims, isn't it all going to go to your clients because you own 99 plus percent you hold 99 over 99% of the money that the estate owes. Our claims will be a 99% of the of the claims are in the estate. Yes, sir. And I imagine the estate isn't going to come close to paying 100% on the dollar right. There's a lot of missing money as I understand it, it was. I mean that was that there's a bank fraud conviction and all kinds of things. Yes, that's correct. I guess I'm trying to understand why all this stuff that's being litigated for years on end, you know, whether there's two or 3 million more in claims I mean I, is there any sense of how big the estate, what the assets in the estate are. Your Honor, I just not in the record but I believe according to the last operating report, there's about $12 million, give or take a little bit that we're in the estate, but that's that's I'm not positive that's the correct number but that's it's close within a million or two. And our claims greatly exceed that but here, the issue is that we. Those are our claims and we're secured and whether we've got the largest amount of claims or not we should be treated that way and we were, we were basically those claims were disregarded as being unsecure as being non existent. Well that's right. So what if, if, if you don't get all the 12 million and assets, the operation, it's going to be a reorganized run running entity again is that what they're going to use the money for. No, I think I do not think so. I think so then what what where's the money going to go and that isn't it has to go to pay off whatever claims you do have to pay off the lawyers I get that I get that's correct. That's correct. And that, I think, brings me to the second issue in the time that I got left that I want to address on our direct appeal, and that is the issue with respect to the tracing argument that we raised is your honor mentioned. There was approximately 9 million were not approximately there was $9,095,000 that were stolen from the estate out of designated accounts there were two of those accounts that were designated specifically for collections on the EFP and BHT portfolio loans. And then there was another 3 million, or you get into that I'll let you. I just have a question. I didn't see the district court address the tracing issue. So, am I, you're I'm right about that okay so did you raise it to him and he just ignored it. And if so, I mean this is a big case I get people missing issues. I'm not but why then didn't you ask to me that's the classic issue, where you asked the judge to reconsider. You say look, there's an issue here that wasn't decided will you now decide why wasn't that done because now we don't have the benefit of a district court opinion on this question. I understand that you are we did not do that because we had a short appeal time is your honor knows is 14 days, and we felt like that it was going to be in this court anyway. So we went ahead and appealed it. And that's, that's that issue. Also with respect to the statute of fraud was the same issue. With respect to the tracing the bankruptcy court held that because those funds were stolen from the account, and we could not trace the exact dollars that were stolen from the account back to the exact dollars that were paid into the estate that we lost our claim to those funds. And we believe that that was a improper interpretation of what the law of tracing is under the UCC the UCC allows tracing by equitable means, and not just the lowest intermediate balance, because that was impossible for us to do here, since the property was stolen. And, you know, the practical question is, where did he get the money if it wasn't money that he stole. How do you pay this much money back, but be that as it may, the tracing rules of Article nine. The comments reference the restatement of trust and as we cited according our brief and the restatement of trust, the restatement gives an example of where funds are stolen from a trust account, and are repaid back to the trust with personal funds, and according to restatement example, they state that the beneficiary does not lose its lane beneficiary of the trust does not lose his lane on those funds. I don't understand the trustee to be saying you lost a lien I understand them to be saying you, you offered no evidence as to any method of equitable tracing at all. And, and obviously the issue you're not reaching suggest that your client had pretty good access to people in Costa Rica. So, is it correct that the only expert that testified as to this issue or valuation was the accountant, you didn't offer. That's right, it was their account, but these were in Panama and neither the trustee nor the pellets had access to the records in Panama. And I think the trustee I think stated in her brief that that was it was not able to get the record. Just because your time's running out the criminal sentencing of Dixon, when the restitution was being confirmed, there was no nothing illuminating about the stolen and co mingling there. Nothing in the in that other than he was, he was ordered to rank restitution to the tune of the amount of money that was stolen and he's paid he paid back about $7 billion of weight. Here's my question, did you file a claim for restitution because restitution is supposed to be distributed from the court, then to whoever whatever the victims are there, there should be a victim finding and if it was, if it was your money in the criminal case you should be able to get it there. Yeah, we might my light is on my answer the question. Yes, we did file a victim impact statement in the criminal proceedings. But you have not. Did you recognize as a victim I mean usually the restitution order says restitution for $7 million and will be paid, you know, 5 million to this person 2 million to this person. The restitution was paid to the bankruptcy state, not to not to the, the, the restitution or was to pay the money back to the state okay so it's back in the estate which going to my further my other point you'll get 99% of after the lawyers take their feet cut cut. So I guess I'm just not sure why some of these things matter so much from a bottom line dollar perspective I think I'm just missing that here. They matter because their dollars that we would have otherwise if we're secured we would collect all of our money, and we would not be as much in the hole is we're going to be big but because the trustees getting the money. The lawyers Jones Walker. Well, because is anyone getting money out of this whole estate besides your clients and the trustee and her attorneys. There's a 10th of a percent of claims out there but the servicing company that the trustee hires get paid. It's actually servicing the loans. Yes. So you see your time you have five minutes on a button. Now time for Mr. Thank you Judge Dennis. Judge Higginson judge Costa may please the court I'm Mark Mansour represent Christina Johnson and her capacity is the duly appointed chapter 11 trustee of the estate of community home financial services. Your Honor's without saying so directly what the appellants have in effect just argued to you and have argued in their brief is that because they assert they are the largest creditors of community home that the bankruptcy rules don't matter. To be clear, and I think we heard this in the briefs we heard this from a few minutes ago. These entities are not all the same. They are not all the same entities. Dr. Edwards is an individual who has a very small claim. That's not an issue. His small claim is not an issue in these appeals. The Edwards family partnership is a partnership in which Dr. Edwards is a partner. But that's where it starts there. Bear Holdings Trust is a trust is a trust under Bermuda law where Dr. Edwards is the settler. He is not a beneficiary. He is not the trustee. It's completely separate entity. And so to say that they are the same misunderstands the nature of the claims and misunderstands how all of this is being. Well, let me ask you the questions I asked the other side about sort of what the point or practical impact of all this is, because I think it's actually more directed to you. And based on some of the concerns, Judge Reeves noted. So so take your attempt to avoid the home improvement loans, the assignment of the home improvement loans. I mean, who's who's who's benefiting from that happening? It seems to me only the trustee, because this isn't a typical situation where there's a whole bunch of different creditors. And and if you knock out one of those claims, it's going to increase the recovery of these other creditors. I mean, it seems like the people getting the money are either the Edwards partnership and all its related entities or the trustees. So, I mean, it does seem like a self-interested thing to be trying to to avoid these loans or to stop the tracing when that's the only entity I see benefiting from that is the trustee. Tell me where I'm wrong. Well, just because that is certainly one way to look at it. And I'm not going to say that Judge Reeves didn't look at it that way because he certainly did. We think it's misplaced for a couple of reasons. The first is that, as I just said, they are separate entities, and that is important from a corporate law standpoint to think about and to remember to understand who gets how much, where they get it. Second, another panel of this court, as Judge Higginson said earlier, other panels of this court have looked at this issue. And one thing that's very important, the last one, which I think was the fee appeal issue, where they explained that a trustee has a duty to look at proofs of claim, to determine the priority of the proofs of claim and to determine who gets the priority for the benefit of the estate. In some respects, the trustee is vindicating the rights of the estate in which it is important to determine who has priority, what that priority is. Let's assume the trustee does standing. That's how I read that March decision. But it's still slight. You still got to explain why, at least as to the home improvement loans, the specific Rainbow Group loan agreement didn't give the lender the right, the discretion to transfer and reassign. Well, the Rainbow Agreement itself, the loan agreement, because keep in mind there are two different agreements. There was the loan agreement itself, and then there was the custodial agreement. The custodial agreement itself had three parties. It had the custodian. It had the debtor, and it had the Rainbow Group. Now, the Rainbow – and it says in the custodial agreement itself that the custodial agreement is the custodian holding it for the benefit of the lender, defines lender as Rainbow Group, and says it cannot be assigned without writing. Right, but I was sort of persuaded by, I guess, the bankruptcy court statement that – or maybe it's the district court reads this point that that limits who could be – how the custodian could be changed. But wasn't the testimony from McCauley himself that Rainbow Group transferred it to Bayer, and that was legitimate? Well, I think the testimony from Mr. McCauley himself was, in fact, that he was never confused as to who the lender was. I don't think he was opining necessarily as to whether the transfer was legitimate or not. But from a – your point, I think, Your Honor, is well taken insofar as that transfer itself was against the – against what was said in the agreement. When you do it that way, what you're doing is reading the agreement and trying to find additional meaning in the face of a clear document. And we would submit that that is against the rules of contract interpretation in order to determine… When you're speaking about contract, you're talking about the custodial contract, not the section pointed to 9-6 in the underlying loan agreement, right? Correct, Your Honor. And so what we're saying is the custodial agreement itself, which is what provides the possession. So let's think about the UCC and the way it says. It says that you have to have possession. The lender needs to have possession in order to have a perfected security interest. And so when we look at that, this is how the parties have asserted that they have possession is through the operation of this custodial agreement. This custodial agreement itself specifically stated that it was for the benefit of the lender and defined who the lender was, and then it was never assigned. Even though the testimony was and the evidence showed that the parties themselves, Dr. Edwards himself speaking on behalf of, I guess, Edwards Family Partnership and Bear Holdings Trust at that point to the extent he could, had sent an email saying we need to assign this. And then for whatever reason decided he didn't, he never ended up doing it. And so in that sense, Judge Higginson, I think that the answer really is it could have been done that way and it could have been a simple document, but it was never actually done. And we cite in our materials, we've cited numerous times Judge Houston's opinions from the Northern District of Mississippi that explain that you cannot, that while these exacting requirements of the UCC may seem harsh for commercial law purposes, they are necessary and they are exacting for that exact purpose in order to make sure that our commercial system works properly. We didn't, I mean, there are many issues in this, and I guess one big picture item. Do you have any reason to disagree with the estimate that there's approximately $12 million left in the estate? I have no reason to disagree with it, Your Honor. I do not know the answer, and I do not know that it's in the record as to what it is today. So I have no reason to disagree with it. And what about just a sort of the awkwardness of the tracing requirement? Is it really that if someone absconds overseas with $9 million, someone who had a secured interest then loses it because it's so well commingled? Or is your position simply that they still have a burden to try to trace it equitably and they made no effort? Well, it's both, Your Honor. I mean, I think that's – our argument is both, is that there's not a citation for the legal standard that if money is stolen out, as unfortunate as that is, the citation they provided below is to the Larson case, which was an internal revenue code case. This is not a tax lien case. That was specific provisions of the Internal Revenue Code that told us specifically that under the Internal Revenue Code, under certain circumstances, a tax lien would remain if money is stolen out or moved out of certain accounts. That doesn't exist in the UCC statute itself. Mr. Spencer – or excuse me – opposing counsel cited some comments to the UCC but not specifically the UCC itself. The UCC does not provide for those types of changes or those types of exceptions to the tracing arguments. So the fact of the matter remains, Your Honor, that the tracing was required to be done. But moreover, Your Honor is right. They made no attempt to actually do any tracing whatsoever, and it is impossible to do so. That is what Mr. Oquand said, and any other attempts that were done were failed or didn't come into the court. I think the judge, bankruptcy judge, found as a matter of fact that it could not be traced. It could not be fairly traced to the money that – or the money that left could not be fairly traced to the money that came back. Was that the conclusion of the criminal sentencing and restitution too? I'm not entirely sure where the criminal restitution issues were, but I can tell you this, which is the bankruptcy court found and talked about the criminal restitution issues. And in that part, he explained that the trustee is the – was named as the victim and that she disagreed with the amounts that the United States in the criminal case said were the amounts, said it was not fully understood where it was. And it was being done as a restitution as its own credit for its own purposes and not necessarily for the bankruptcy purposes or for the tracing purposes. And I think for that point, Your Honor, I would direct you back to Judge Olak's opinion because I think it really talks about that issue a lot more than I'm going to be able to at the moment. But that's not a satisfying answer, but I hope it's as close as I can get. Two quick questions about the mortgage portfolios because, of course, your position aligns with, I take it, both the bankruptcy court and the district court. But as to his argument that you heard him make as to three through six, why wouldn't it be true that CHFS could have just performed unilaterally? They were given a chunk of money to make a joint venture investment purchase. They had it, and they owed the money back. And therefore, it really didn't turn on whether future income stream came in from the underlying loans. But it did because the way that this is described – and look, Your Honor, part of the problem I think really is that these are unwritten loans. And so that's exactly the problem is we don't fully have a fully baked agreement that you would expect from a loan agreement because they're unwritten. That's part of the problems. They are extremely poorly written. Mississippi law seems to contemplate there could be an oral agreement, and it wouldn't be subject to the statute of frauds if your client could have performed – I mean, they'd given all the money early on. There was nothing else they were going to do. I understand that, Your Honor, but what they did is they bought the loans. They bought the loan portfolios that they then are servicing. So they bought – they take the money from – to put it crudely, I think they took the money from Dr. Edwards – from Edwards Family Partnership. They bought these second or third mortgages on homes and then got income streams that they then sent back to Edwards Family Partnership. And Edwards Family Partnership would send back a servicing fee or a bonus or some sort of amount to compensate for some of the work CHFS was doing. It's not your typical lending agreement, but again, the bankruptcy court found that it was a lending agreement. So in that sense, what you have is, in many respects, to make an analogy almost worse, is a pay-when-paid contract. That's almost what you have here that's happening. And so in that sense, it belies understanding, at least from my point of view, to think that you have a 15-month – that it could be these 2,000 loans, and I think that's the number that's talked about in here. 2,000 consumer loans are going to be repaid and performed within 15 months. That simply belies understanding or belies any sort of understanding of what's happening. Further – Now, that was helpful. Go ahead. If you have something further, I think I can get a quick concession to you as to the seventh portfolio. Both sides, remarkably, given how long this litigation has been, seem to agree that neither the district court nor the bankruptcy court focused in on the seventh portfolio. Is it fair to say that you're in agreement there? I would say that neither side has appealed what the other one said. I would say that the bankruptcy court found that the – Well, the bankruptcy court dismissed the proof of claim they made as to that portfolio, but I don't see any resolution of that. My understanding is what he said was that one was a joint venture. The seventh portfolio was a joint venture or was different than the other six. Why would you dismiss it then? I think – and I could be incorrect, and I have not focused on this, Judge Higginson. I thought that what he did was dismiss – again, there were four proofs of claim that were filed. The EFP and BHT filed joint venture proofs of claim and then filed alternative loan proofs of claim for the same stuff, and they said they were done in the alternatives. So I think what he was doing was dismissing the proof of claim that was the loan one for the BHT and then reforming the amount on the joint venture. I could be mistaken about that, but I thought that's what was happening. Okay, finish your thought. You'd said further. We were back on three to six. Yeah, we were back on at least on the statute of frauds. And the only other point I wanted to add on that is in some respects, and I do see that what Mississippi case law has said, but it really strikes me as odd to say that a – you almost are reading out the Mississippi – the statute of frauds from Mississippi law. If you're saying it is theoretically possible to repay a loan immediately, well, yes, if I get a million dollars, I can theoretically repay it immediately because I now have a million dollars I could repay it with if I'm not going to do it. That almost reads it out of the statute from that sort of argument. And so from that standpoint, I think it needs to be very strictly construed just to make sure that we have a limiting principle that is – that makes sense for the statute of frauds with regards to that. Your Honor, I do want to briefly talk about the post-petition conduct because I think it is an important point. I have a question about that. The bankruptcy court says he's not relying on 362K, but then he goes through all the 362K factors and doesn't really go through contempt factors. So what's your view of what we're reviewing? What was the ruling below? I think the ruling below was – I think it was a bit of a hybrid, and I'm not going to accuse the bankruptcy court of being overly clear on that. And that's something that we may have all benefited from a more clear response. But with that said, I think it's a hybrid of both. I think he does think, based on this, that 362K is available to a corporate debtor based on this court's ruling in St. Paul case that he cites in which he talks about that 362 is available to corporate – to people who are other than individual debtors. I think he also admits that could be a stretch and has not been decided by the fifth circuit. Colliers disagrees. Colliers says the use of individual instead of persons means that it doesn't cover a trustee is the direct question we're dealing with that Colliers talks about. I certainly concede that Colliers disagrees with that. I would point out that even though I cite Colliers numerous times – Colliers is not, in fact, law – but with that said, Judge Costa, I concede that it certainly does disagree with that statement. And I believe says it's the better view to say that it does not apply to the trustee. With that said, however, is how we get into the contempt. And while we do talk about them as – they are separate standards, I think really what happened here, the judge said, yeah, it doesn't matter which way I go. It still falls within the standards, no matter how you look at it, in order to say that there is damages available for the violation of this stay, whether I proceed under 105 in my inherent powers or whether I proceed under 362K. In your brief, I don't remember any authority, but you did submit the 28J letter with the bankruptcy court in Mississippi. And when I went back and looked at the bankruptcy judge, it relies on our chestnut case. But those – the violations of the stays are truly trying to seize property of the estate. Here, as I read your brief, your theory of interference is that he didn't on his own disclose to you his conversations with Meehan, or is your theory to support contempt – is the violative act really the CD? It's the information. So it's not the physical CD itself. It's the information that is contained. Do we even know what – I mean, I don't even know if this – is the CD in the record now? It is. It is? Yes, it is, Your Honor. But is it described in – are the contents described in your briefs or in the bankruptcy court opinion, or is it subsequent? Like, I honestly – I mean, I'm in a world that I just don't – I couldn't find the record. Edwards is suggesting that this was information that Meehan had that may be preexisting, that you all had it. It's just the underlying documents. Well, and that's – I think that is part of the issue, Your Honor, is it turns out, and the trustee testified about this at trial, and Dr. Edwards testified about it at trial as well. Meehan was subpoenaed. He did not appear for this – for the trial. But the CDs themselves were turned over, and the trustee testified, and the bankruptcy court did talk about it. I don't have a citation for you. The contents of those CDs, which included information the trustee did not actually have and did include new information about the whereabouts of certain funds, where certain information went, how it got there. And this is – I think the important point is it is estate funds. And what judge – and what Dr. Edwards did is he went to Costa Rica. He found out about Mr. Meehan. He paid for the information, had it sent to him numerous times in numerous ways, and did not disclose it. Maybe I'm going to ask you, just with your time running out though, do you agree with me that Chestnut and the KSU-28 Jade, those are about a creditor trying to go around and actually take estate property? What's your best case about the creditor is very disappointed in the trustee, and therefore the creditor has a separate line of information? I would again say, Your Honor, that the – and it is in our briefs, and I cannot remember its name, and we will get it to you if permitted. But there are cases in our briefs that explain that information about the estate, the books and records of the estate are, in fact, property of the estate that need to be turned over. And that is refusing to turn over property of the estate, which includes information about the estate. Okay, let's push this a few times up. So you're saying the record is conclusive that the information about the property and estate was information that did not preexist in the possession of the trustee? It was not in the possession of the trustee. It certainly preexisted, but it was not in the possession of the trustee prior to that. Mr. Meehan, your time has elapsed. Thank you. Mr. Spencer, you have five minutes on rebuttal. Thank you, Your Honor. Just quickly a couple of points that were raised. It's not the fact that there are 2,000 loans that have to be repaid in five years. That's not the issue. The issue is whether CHFS has to be – can repay it. That's the obligor on the loan. And as I heard counsel concede, the statute of frauds in Mississippi says if it's capable of being performed within 15 months, then it is not within the statute. And there is no technical exception to that rule. It just cannot be performed within 15 months. It is not subject to the statute of frauds. I'm going to take this backwards, and I'm going to respond to the question about the information in the record about the CDs. Those CDs were sent to Dr. Edwards' exhibit P32 in October of 2014. And Dr. Edwards' email back, which is in the exhibits, states that there's no loan servicing information on the CDs. And he was criticized a lot for saying in his email, of course the information may find some use, but it didn't have the servicing information on it. And quite frankly, Dr. Edwards was looking for loans that are still lost. The BHT portfolio loans were stolen by Butch Dixon, and those loans are – nobody knows where they are. They still have not been found, and here we are almost 10 years later, and those loans aren't available. Or they're not – nobody knows where they are. With respect to the home improvement loan portfolio, I think it's important to look at the way that the trustee challenged that secured, unsecured claim. She challenged it wearing her hat as a lien creditor under 544. The Bankruptcy Code has an enabling statute that allows her to – or allows the trustee to step into the position of a hypothetical lien creditor. So, Ben, what could a hypothetical lien creditor do on the date of bankruptcy with respect to these notes? Well, they couldn't do anything. They couldn't go get them because they weren't in the possession of the bankruptcy estate. So there was nothing that the trustee in her capacity as a lien creditor under 544 – and that's what the bankruptcy court said she was challenging those claims on – she could not go get those loans from CHFS because they didn't have them. They were in the possession of the custodian in this case, who was Mr. McCarley. The thing that I heard counsel argue are arguments that relate to the trustee when she's wearing another hat, and that's the hat as the successor to the debtor under Section 541. But that's not how she sued in this case. She sued to set aside those under 544. We have possession of them, and as Judge Reeves said in his opinion about that, it's a pretty simple path. The code, the bankruptcy code, says that you can perfect by possession, and there's nothing in the code that requires you to re-perfect your security interest. And that's what the court said here. You did not have to re-perfect your security interest. They were perfected. There was no question but that CHFS knew who the lenders were under the loan agreement because in 2010, they signed amendments to the loan and security agreement. At the same time, they signed new notes and new promissory notes that recognized that EFP and BHT are the lenders under the loan agreement. The last part on the tracing, if I can reference that real quick. Can you mention also, please, the Seventh Portfolio? Because he had his answer as to the status of that. No, the Seventh Portfolio, we have a claim, and the bankruptcy court just disallowed it. And that's why we appealed that. And they collected our money pre-petition and post-petition before the trustee got involved. And that money has not been paid back to us, so we should be able to assert a claim for that. Absolutely. Thank you, Your Honor. I wanted to mention, if I could, real quickly, the reason that this is important for us to have the claims determined secured as opposed to unsecured is because every dollar that is not secured is a dollar that we don't get paid back. And that's what this is about. This is our client's money. It's his family business.  It's a lot of money. And that's why we would ask that the court grant the relief that we requested. I see that I'm out of time. Thank you, Your Honor. Thank you, Mr. Spencer. Mr. Mintz, the case will be submitted. Would you all like to take a break or go on to the next one?